[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-10683

_____

EDWARD THOMAS JAMES,

Petitioner-Appellant,

*versus*

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:18-cv-00993-WWB-RMN

_____

2                           Order of the Court                        25-10683

Before WILLIAM PRYOR, Chief Judge, and GRANT and BRASHER, Circuit Judges.

PER CURIAM:

Edward Thomas James, a Florida inmate sentenced to death, has moved this Court to stay his execution, which is presently scheduled for March 20, 2025. We **DENY** the motion.

**I.**

One evening more than thirty years ago, James raped and strangled eight-year-old Toni Neuner to death. *James v. State*, 695 So. 2d 1229, 1231 (Fla. 1997). He then murdered an adult woman, Betty Dick, stabbing her to death in view of one of her grandchildren. *Id.* James took Dick's purse, jewelry bag, and car, and drove across the country. *Id.* He sold Dick's possessions for money along the way. *Id.* After he was arrested, he gave two videotaped confessions to police. *Id.*

James pleaded guilty to two counts of first-degree murder, along with other crimes. *Id.* at 1230. After a penalty-phase trial, a jury returned an advisory recommendation for a sentence of death for each of the first-degree murder convictions. *Id.* at 1233. The trial court followed the jury's recommendation and sentenced James to death on both first-degree murder convictions. *Id.*

James appealed, and the Florida Supreme Court affirmed his death sentences. *Id.* at 1238. The Supreme Court of the United States denied James's petition for a writ of certiorari on December 1, 1997. *James v. Florida*, 522 U.S. 1000 (1997).

In 1998, James, through counsel, moved for state postconviction relief. *James v. State*, 974 So. 2d 365, 366 (Fla. 2008). The trial court set an evidentiary hearing on some claims. *Id*. But before it held a hearing, James filed a *pro se* notice that sought dismissal of his postconviction proceedings. *Id*. The trial court held a hearing and engaged in a colloquy with James to ensure that he understood the consequences of his actions. *Id*. After concluding that James understood the consequences of his actions, the trial court discharged James's counsel and allowed James to withdraw his motion for postconviction relief. *Id*.

Years later, James sought reappointment of counsel and reinstatement of his state postconviction proceedings. *Id*. After holding a hearing, the trial court denied that motion. *Id*. The Florida Supreme Court affirmed the trial court's order. *Id*. at 368.

In 2018, more than ten years after his state proceedings ended, James petitioned for federal habeas relief. James sought—and the district court granted—a stay of James's habeas proceedings while he exhausted claims in state court. The state trial court summarily dismissed James's successive motion for postconviction relief, the Florida Supreme Court affirmed that decision, and the Supreme Court of the United States denied James's petition for a writ of certiorari. *James v. State*, 323 So. 3d 158, 161 (Fla. 2021), *cert. denied*, 142 S. Ct. 1678 (2022).

In 2022, the district court lifted the stay and James filed an amended habeas petition. In his amended habeas petition, James included mental health records to support his assertion that

"numerous experts have found red flags indicating that [James] was incompetent at the time of his postconviction waiver, and that incompetency persisted during the time after his waiver."

The district court held that James's habeas petition was barred by the statute of limitations. The district court held that James was not entitled to equitable tolling because he failed "(1) to show a causal connection between his mental impairments and his ability to timely file a § 2254 petition" and that he failed "(2) to demonstrate reasonable diligence." The district court further concluded that the actual innocence gateway was inapplicable, as there was no "reasonable likelihood that the new mental health evidence provided by Petitioner would prevent any reasonable juror from finding him guilty." The district court denied James's amended petition as untimely, and it denied a certificate of appealability. The district court denied James's motion for reconsideration.

James appealed to this Court. On February 3, 2025, a member of this Court denied James's application for a certificate of appealability, concluding that jurists of reason would not debate the district court's conclusions. On February 18, Florida Governor Ron DeSantis signed a death warrant and scheduled James's execution for March 20, 2025.

James then filed a motion for reconsideration and an emergency motion to stay his execution, which a three-judge panel of this Court denied. On the same day that James moved for reconsideration with this Court, he filed a motion to amend his habeas petition, or alternatively, a motion for relief from judgment under

Rule 60(b), Fed. R. Civ. P., in the district court. James supported his motions with newly received CT scans and expert reports about those scans.

The district court denied James's motion for relief under Rule 60(b), Fed. R. Civ. P., on the grounds that James's new evidence would not "produce a new result," or in other words, it would not "warrant the application of equitable tolling or the actual innocence gateway." The district court denied James's alternative motion to amend his habeas petition on the ground that it lacked jurisdiction to allow an amendment after the court had entered final judgment on the petition and James had appealed.

James filed a second motion to stay his execution with this Court. He also filed a notice of appeal and a motion for a certificate of appealability.

## II.

James "bears the burden of establishing that he is entitled to a stay of execution." *Mann v. Palmer*, 713 F.3d 1306, 1310 (11th Cir. 2013). We may grant the equitable relief of a stay of execution only if James establishes that "(1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest." *Valle v. Singer*, 655 F.3d 1223, 1225 (11th Cir.

2011) (quoting *DeYoung v. Owens*, 646 F.3d 1319, 1324 (11th Cir. 2011)).

## III.

James argues that he has a substantial likelihood of success on appeal in two respects. And he argues that the equities warrant a stay so that he may fully litigate these issues on appeal. We disagree.

James argues that he has a substantial likelihood of establishing that the district court erroneously denied his motion for relief under Rule 60(b) of the Federal Rules of Civil Procedure. Rule 60(b)(2) provides that a "court may relieve a party . . . from a final judgment, order, or proceeding for . . . (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." The district court denied the motion because it concluded James could not establish "that consideration of the new evidence would probably produce a new result—*i.e.*, would warrant the application of equitable tolling or the actual innocence gateway—in this case." *See Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1309 (11th Cir. 2003).

We cannot say that James is likely to succeed on this argument. When we consider—as the district court did—James's newly offered medical evidence along with his previous evidence, we see a lack of connection between any mental impairment and "the relevant time—*i.e.*, the time immediately before, during, or after his waiver of collateral proceedings and through the end of his AEDPA

limitations period." As the district court said, the new evidence "fails to show a causal connection between [James's] mental impairments and his ability to file a timely petition." And the new evidence fails to explain James's lack of reasonable diligence "between the waiver of his post-conviction proceedings, the end of the AEDPA limitations period, and his later decision to attempt to reinstate his post-conviction proceedings," or "during the ten-year period between the Florida Supreme Court's affirmance of the denial of such reinstatement and his June 2018 motion in this Court for appointment of [counsel] to pursue federal habeas remedies." Nothing about that evidence establishes that, at the time James waived his post-conviction proceedings, he could not "understand the proceedings against him, the nature of his convictions and death sentence, and the nature of the consequences that would stem from his decision to withdraw his post-conviction motion." And, especially in light of the overwhelming evidence of James's guilt, this evidence has nothing to do with the actual innocence gateway to the statute of limitations.

James also argues that he is likely to succeed in establishing that the district court erred in denying his post-judgment motion to amend. We believe this argument fails for two reasons.

First, we have explained that "under jurisdictional principles common to all federal civil cases, a prisoner cannot amend a habeas petition and relitigate the case after the district court has entered its final judgment and he has appealed." *Boyd v. Sec'y, Dep't of Corr.*, 114 F.4th 1232, 1236 (11th Cir. 2024). Instead, "[a] final judgment

ends the district court proceedings, cutting off the opportunity to amend pleadings and precluding relitigation of any claim resolved by the judgment unless that judgment is first set aside." *Id.* James argues that a stay is appropriate because the Supreme Court has granted certiorari in *Rivers v. Lumpkin*, 99 F.4th 216 (5th Cir. 2024), *cert. granted*, 145 S. Ct. 611 (2024) (No. 23-1345), to address whether a post-judgment motion to amend a habeas petition is a successive petition under 28 U.S.C. §2244(b)(2). But "a grant of certiorari does not change the law." *Rutherford v. McDonough*, 466 F.3d 970, 977 (11th Cir. 2006); *see also Ritter v. Thigpen*, 828 F.2d 662, 665–66 (11th Cir. 1987); *Thomas v. Wainwright*, 788 F.2d 684, 689 (11th Cir. 1986). Indeed, it is "the unequivocal law of this circuit that, because grants of certiorari do not themselves change the law, they must not be used by courts of this circuit as a basis for granting a stay of execution that would otherwise be denied." *Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1298 (11th Cir. 2007).

Second, and more importantly, even if the district court's jurisdictional ruling were incorrect, James's motion to amend would not alter his failure to file a federal habeas petition until many years after the statute of limitations had run. As we have already explained, James's newly proffered medical evidence does not support his equitable tolling argument. *See Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) ("[T]he alleged mental impairment must have affected the petitioner's ability to file a timely habeas petition."). And James's new evidence of a recent mental impairment does not open the actual innocence gateway.

25-10683                    Order of the Court                    9

Finally, we must consider that in seeking a stay of execution, James is seeking an equitable remedy, and equity is not on his side. *See Gomez v. U.S. Dist. Ct. for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992). The evidence of James's guilt is overwhelming, he pleaded guilty to the crime, and he voluntarily dropped his post-conviction challenges many years ago. "Both the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). Nonetheless, this is James's second motion to stay his execution arising from the same federal habeas proceeding, and this motion raises essentially the same issues about the timeliness of his federal habeas petition that we have already addressed in denying his first motion for a certificate of appealability and his first motion for a stay. A stay of James's execution would be inequitable and "adverse to the public interest." *Valle*, 655 F.3d at 1225.

## IV.

James's motion for a stay of execution is **DENIED**.