[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  12-15191
Non-Argument Calendar

_____

D.C. Docket No. 3:12-cv-01036-UAMH-JBT

JOHN FERGUSON,

Plaintiff - Appellant,

versus

WARDEN, FLORIDA STATE PRISON,
SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
DOES 1-50,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 18, 2012)

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Appellant John Ferguson is a death row prisoner scheduled to be executed

by the State of Florida on October 18, 2012.  The State originally scheduled his

execution for October 16, 2012, but the state court stayed the execution to determine whether Ferguson was sane to be executed.  The state court found Ferguson sane and subsequently denied his motion to stay the sentence of death.

Ferguson also brought suit in federal district court, filing a complaint under 42 U.S.C. § 1983 and filing a motion for temporary restraining order, preliminary injunction, and stay of execution.  Ferguson contends that: (1) Florida's three-drug lethal injection protocol violates his right to be free from cruel and unusual punishment under the Eighth Amendment; and (2) Appellees' failure to abide by the procedural safeguards of Florida's lethal injection protocol violates his right to equal protection under the Fourteenth Amendment.

On October 10, 2012, the district court denied Ferguson's motion, concluding, *inter alia*, that Ferguson failed to demonstrate a substantial likelihood of success on the merits of his Eighth and Fourteenth Amendment claims, and that Ferguson failed to establish that he would suffer irreparable injury if the stay were denied.  This appeal followed.

"A stay of execution is equitable relief which this Court may grant only if the moving party shows that: (1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction

2

would not be adverse to the public interest." *DeYoung v. Owens*, 646 F.3d 1319, 1324 (11th Cir. 2011) (internal quotation marks omitted). "We review the denial of a stay of execution under the abuse-of-discretion standard." *Powell v. Thomas* (*Powell (Williams)*), 641 F.3d 1255, 1257 (11th Cir. 2011) (per curiam), *cert. denied Williams v. Thomas*, 131 S. Ct. 2487 (2011).

## A.    Substantial Likelihood of Success on the Merits

### 1.    Eighth Amendment Violation

Ferguson wages a four-pronged attack on Florida's lethal injection protocol. Ferguson first takes issue with Florida's use of sodium pentobarbital as the first drug in its three-drug lethal injection sequence. He next challenges Florida's September 4, 2012 substitution of vecuronium bromide for pancuronium bromide as the second drug in the three-drug sequence. Ferguson then challenges the manner in which the lethal injection protocol is implemented. Finally, Ferguson contends that Florida's use of a three-drug cocktail is no longer acceptable under evolving standards of decency.

In order for Ferguson to prevail on an Eighth Amendment claim, he must demonstrate that:

> (1) the State is being deliberately indifferent (2) to a condition that poses a substantial risk of serious harm to him. In the lethal injection context, this standard requires an inmate to show an

3

> objectively intolerable risk of harm that prevents prison officials
> from pleading that they were subjectively blameless for purposes
> of the Eighth Amendment.

*DeYoung*, 646 F.3d at 1325 (internal quotations marks and citations omitted). We conclude that Ferguson has not demonstrated a substantial likelihood of success on the merits of his Eighth Amendment claim.

As a preliminary matter, Ferguson's Eighth Amendment claim is clearly barred by Florida's four-year statute of limitations. *See Van Poyck v. McCollum*, 646 F.3d 865, 867 (11th Cir. 2011) (per curiam) (citing *Henyard v. Sec'y, Dep't of Corr.*, 543 F.3d 644, 647 (11th Cir. 2008) (per curiam)). We have consistently held that "a method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." *McNair v. Allen*, 515 F.3d 1168, 1174 (11th Cir. 2008); *see DeYoung*, 646 F.3d at 1324–25; *Powell v. Thomas*, 643 F.3d 1300, 1303–04 (summarizing the holding in *McNair*); *Henyard*, 543 F.3d at 647–48. Thus, Ferguson had four years from the date his sentence became final, February 12, 2000, in which to file his challenge to Florida's method of execution absent a "substantial change" in Florida's execution protocol. Because the statute of limitations ran on February 13, 2004, Ferguson's claim is over eight years late.

4

Not only did Ferguson fail to submit his lethal injection challenge within the statute of limitations, but our precedent also makes it abundantly clear that the use of sodium pentabarbital as the first drug in the three-drug sequence does not constitute a substantial change for the purpose of restarting the statute of limitations. *See Valle v. Singer*, 655 F.3d 1223, 1225 (11th Cir. 2011) (per curiam); *see also DeYoung*, 646 F.3d at 1325; *Powell*, 643 F.3d at 1304–05; *Powell (Williams)*, 641 F.3d at 1258. Similarly, the substitution of vecuronium bromide for pancuronium bromide as the second drug in the three-drug sequence does not constitute a substantial change, as it is merely a substitution of one bromide paralytic for another. *See Powell*, 643 F.3d at 1304 (recognizing the minimal differences between sodium thiopental and sodium pentobarbital, as both are "classfied as barbiturates" and they only differ "in their length of effect" (citing *Pavatt v. Jones*, 627 F.3d 1336, 1337 (10th Cir. 2010)). Therefore, Ferguson's claims remain barred by Florida's four-year statute of limitations.

Even if the statute of limitations did not bar his § 1983 claim, this court has already addressed the merits of Ferguson's Eighth Amendment claim on multiple occasions and found that the use of sodium pentobarbital in the lethal injection sequence does not violate the Eighth Amendment. *See Valle*, 655 F.3d at 1225; *DeYoung*, 646 F.3d at 1327; *Powell (Williams)*, 641 F.3d at 1258. Further,

5

although this court has not specifically dealt with the substitution of verconium bromide as the second drug in the lethal injection protocol, Ferguson has failed to demonstrate how Florida's use of vecuronium bromide subjects him to a substantial risk of serious harm. *See Baze v. Rees*, 553 U.S. 35, 61–62, 128 S. Ct. 1520, 1537 (2008) (plurality opinion). Ferguson's speculation as to the parade of horribles that could *possibly* occur during his execution does not meet the burden of proof required by the Eighth Amendment. *See DeYoung*, 646 F.3d at 1325 (emphasis omitted) (noting that to violate the Eighth Amendment, the "risk must be sure or very likely to cause . . . needless suffering"). Simply because an execution method may inadvertently result in pain does not establish the sort of "objectively intolerable risk of harm" necessary to establish an Eighth Amendment violation. *Baze*, 553 U.S. at 50, 128 S. Ct. at 1531.

Ferguson's challenges to the implementation of the 2012 protocol also fail to satisfy his Eighth Amendment requirement. The allegations concerning insufficient safeguards and the execution team members' lack of medical training are without support. Ferguson's barrage of "if-then" hypotheticals do not amount to concrete evidence of an "objectively intolerable risk of harm" necessary to establish an Eighth Amendment violation. *See id*.

Lastly, Ferguson argues that the Eighth Amendment's "evolving standards

6

of decency" jurisprudence invalidates Florida's use of a three-drug lethal injection protocol. Specifically, Ferguson argues that the protocol presents "objectively unacceptable risks of pain and suffering given the existence and increasingly widespread use of the more humane one-drug protocol."

Under *Baze*, an inmate cannot successfully challenge a three-drug protocol merely by suggesting that the one-drug protocol is a feasible or superior option; he must also show that the current protocol creates a "demonstrated risk of severe pain," and that the proposed alternative method significantly reduces the risk of that pain. *Id*. at 61, 128 S. Ct. at 1537; *see Valle*, 655 F.3d at app. 1237. Although the one-drug protocol is a feasible alternative that could be readily implemented, "a condemned prisoner cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative." *Baze*, 553 U.S. at 51, 128 S. Ct. at 1531. Ferguson offers nothing more than a simple alternative to Florida's current lethal injection protocol, and asks that this court transform itself into a "board[] of inquiry charged with determining 'best practices' for executions." *Id.* This is not the role of the court.

2.    Fourteenth Amendment Violation

Ferguson also argues that Florida's implementation of its three-drug protocol violates his Fourteenth Amendment right to equal protection. "To state

7

an equal protection claim, [Ferguson] must show that the State will treat him disparately from other similarly situated persons." *DeYoung*, 646 F.3d at 1327 (citing *Amnesty Int'l. USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009)). "Second, '[i]f a law treats individuals differently on the basis of . . . [a] suspect classification, or if the law impinges on a fundamental right, it is subject to strict scrutiny.'" *Arthur v. Thomas*, 674 F.3d 1257, 1262 (11th Cir. 2012) (per curiam) (alterations in original) (quoting *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009)).

Ferguson fails to assert that any of the alleged deficiencies will result in disparate treatment from other death row inmates. Under Florida's 2012 protocol, all death row inmates facing execution will be subject to the same sequence of drugs, the same procedures, and the same safeguards in the execution process. Ferguson has presented no evidence to substantiate his claims of disparate treatment.

## B.    Irreparable Injury

We need not decide whether Ferguson has established irreparable injury because he has failed to satisfy his burden regarding the substantial likelihood of success on the merits. Accordingly, Ferguson's motion for temporary restraining order, preliminary injunction, and stay of execution is denied, and the district

court's order is affirmed.

**MOTION FOR TEMPORARY RESTRAINING ORDER,**

**PRELIMINARY INJUNCTION, AND STAY OF EXECUTION IS DENIED;**

**DISTRICT COURT'S ORDER IS AFFIRMED.**

9

CARNES, Circuit Judge, concurring:

I fully concur in the per curiam opinion.  I write separately only to note my disagreement with my colleague's view that the district court's conclusion that Ferguson failed to show irreparable injury is inconsistent with binding precedent. Both In re Holladay, 331 F.3d 1169, 1177 (11th Cir. 2003), and Woodson v. North Carolina, 428 U.S. 280, 303–04, 96 S.Ct. 2978, 2291 (1976), involve claims that the defendant or movant should not be executed.  Obviously, executing a defendant who should not be executed inflicts an irreparable injury.  That is not the claim we have here.  See Cooey v. Strickland, 604 F.3d 939, 946 (6th Cir. 2010).

WILSON, Circuit Judge, concurring:

Although I agree with the district court that Ferguson has failed to satisfy his burden regarding the substantial likelihood of success on the merits, I do note that the district court's conclusion that Ferguson failed to show irreparable injury is inconsistent with Eleventh Circuit and Supreme Court precedent. As a general rule, in the circumstance of an imminent execution, this court presumes the existence of irreparable injury. *In re Holladay*, 331 F.3d 1169, 1177 (11th Cir. 2003) ("We consider the irreparability of the injury that petitioner will suffer in the absence of a stay to be self-evident."). Further, the Supreme Court has recognized that "death is a punishment different from all other sanctions in kind rather than degree." *Woodson v. North Carolina*, 428 U.S. 280, 303–04, 96 S. Ct. 2978, 2991 (1976). The irreversible nature of the penalty makes irreparable by definition any injury inflicted in violation of the United States Constitution. In this case, however, because Ferguson has failed to show the existence of any constitutional violation under the "substantial likelihood" prong, we need not address in depth the other requirements necessary to grant a stay of execution.

11