[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10561
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cv-00110-BJD-JBT

JUAN CARLOS CHAVEZ,

Plaintiff-Appellant,

versus

FLORIDA SP WARDEN,
SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
JOHN DOES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 12, 2014)

Before CARNES, Chief Judge, WILSON and MARTIN, Circuit Judges.

CARNES, Chief Judge:

Juan Carlos Chavez kidnapped a nine-year-old boy at gunpoint, anally raped him, verbally taunted and terrorized him, shot him to death, dismembered his body, discarded his body parts in three planters, and then filled those planters with concrete.  See Chavez v. State, 832 So. 2d 730, 738–41 (Fla. 2002).  Facing imminent execution, Chavez has filed a lawsuit claiming that he may experience unnecessary pain when the State of Florida executes him by lethal injection.  After conducting an evidentiary hearing, the district court denied Chavez's request for a temporary restraining order, preliminary injunction, or stay of execution.  This is his appeal.[1]

## I. BACKGROUND

On January 2, 2013, Florida Governor Rick Scott signed Chavez's death warrant and his execution was set for 6:00 p.m. on February 12, 2014.  After the death warrant was signed, Chavez filed a 42 U.S.C. § 1983 lawsuit in district court challenging the constitutionality of Florida's recently revised lethal injection protocol, which substituted midazolam hydrochloride, a sedative in the

---

[1] Chavez's unsuccessful attempts to have his conviction and death sentence set aside are reflected in Chavez v. Secretary, Florida Department of Corrections, No. 14-10486, — F.3d —, 2014 WL 504720 (11th Cir. Feb. 10, 2014); Chavez v. State, No. SC14–35, 2014 WL 346026 (Fla. Jan. 31, 2014); Chavez v. State, No. SC12–1470, 2013 WL 5629607 (Fla. Oct. 11, 2013); Chavez v. Secretary Florida Department of Corrections, 647 F.3d 1057 (11th Cir. 2011); Chavez v. State, 12 So. 3d 199 (Fla. 2009); and Chavez v. State, 832 So. 2d 730 (Fla. 2002).

2

benzodiazepine family of drugs, for pentobarbital, a barbiturate, as the first drug in the three-drug protocol.

Florida's revised lethal injection protocol, adopted on September 9, 2013 (2013 Protocol), calls for the sequential intravenous administration of three drugs: (1) 500 milligrams of midazolam hydrochloride, which is meant to serve as an anesthetic; (2) 100 milligrams of vecuronium bromide, a neuromuscular blocking agent that paralyzes voluntary muscles, including the diaphragm, and stops respiration; and (3) 240 milliequivalents of potassium chloride, a naturally occurring salt that induces cardiac arrest by interfering with the heart's electrical activity. Chavez also filed a motion for a temporary restraining order, preliminary injunction, or stay of execution (omnibus motion).

Although Chavez's amended § 1983 complaint raised a number of claims for relief from his impending execution, only one of those claims merits extended discussion.[2] Chavez's principal claim is that the use of midazolam hydrochloride

---

[2] We do, however, pause to note our agreement with the district court's reasoning concerning Chavez's claim that the forcible administration of vecuronium bromide would violate his due process rights under Sell v. United States, 539 U.S. 166, 123 S.Ct. 2174 (2003), because it serves no medical purpose in the execution process. As the district court explained, the liberty interest in avoiding involuntary medical treatment that Sell identified does not apply in the context of capital punishment because "by its nature, the execution process is not a medical procedure, and by design, it is not medically appropriate for the condemned." Doc. 50 at 39. And "[u]sing drugs for the purpose of carrying out the death penalty does not constitute medical treatment." Id. at 42.

3

in the 2013 Protocol violates the Eighth Amendment's ban on cruel and unusual punishment because it creates a substantial risk of serious harm.  In both his amended complaint and omnibus motion, Chavez alleged that when used by itself midazolam is not effective in inducing "a surgical plane of anesthesia," which is a state of complete unconsciousness and insensitivity to pain or other "noxious stimuli" that would prevent a condemned inmate from experiencing the asphyxiation and searing pain caused by the remaining two drugs in the lethal injection protocol.

Relying on the declaration of his retained expert, anesthesiologist Dr. David Lubarsky, Chavez asserted that midazolam is not typically used in clinical settings, nor FDA-approved for use, as a standalone anesthetic in major surgical procedures because it has no analgesic (pain-relieving) properties; that it can trigger "paradoxical reactions" which would prevent its sedative properties from taking effect, particularly in those, like himself, who suffer from extreme anxiety or certain other mental disorders; that there is no scientific evidence that 500 milligrams of midazolam would produce a state of complete unconsciousness; and that the 2013 Protocol is not properly suited to addressing these concerns because it does not require the assistance of trained medical personnel and its mandated

4

consciousness check does not adequately ensure that an inmate is unconscious before the final two drugs in the protocol are administered.

Chavez also pointed to published news reports of three recent executions — the Florida executions of William Happ and Askari Abdullah Muhammad, and the Ohio execution of Dennis McGuire — each of which is said to have involved varying degrees of movement after the administration of midazolam. Chavez took these reported movements — a momentary head movement in case of Happ, the opening of an eye in the case of Muhammad, and McGuire appearing to gasp for air — as indicating that midazolam is not effective in rendering an inmate unconscious and insensate to pain. As a proffered alternative to the use of midazolam, Chavez advocated the use of a barbiturate, either in combination with other drugs or in a single fatal dose, as a more humane method of execution that "would significantly reduce the substantial risk of excruciating pain" allegedly created by the 2013 Protocol. But the only specific barbiturates named anywhere in his amended complaint or omnibus motion were pentobarbital and sodium thiopental, both of which Florida had previously used as the first drug in its lethal injection protocol. Florida initially used sodium thiopental, but as Chavez explained in an appendix to his amended complaint, "international pressure against the death penalty resulted in a shortage of sodium thiopental" that forced states

5

with capital punishment "to scramble for an alternative drug." Florida then selected pentobarbital, but as Chavez conceded in his amended complaint, pentobarbital is no longer available and the "2013 Protocol was created in response to [its] unavailability."

After an evidentiary hearing marked by sharply conflicting testimony from Chavez's expert, Dr. Lubarsky, and the State's expert, Dr. Roswell Lee Evans, the district court denied Chavez's omnibus motion for a temporary restraining order, preliminary injunction, or stay of execution because he had not shown a substantial likelihood of success on the merits of his claims, both on the merits themselves and as to the statute of limitations defense the State had asserted. The court rejected Dr. Lubarsky's testimony as "essentially speculative and insufficient to meet [Chavez's] burden," and instead credited Dr. Evans' testimony that 500 milligrams of midazolam — forty times the dosage typically used in clinical settings — would not only induce a deep anesthetic state in which an inmate would be rendered insensate, unconscious, and incapable of feeling pain, but would ultimately result in respiratory arrest, cardiac arrest, and death. Doc. 50 at 22–25, 33, 35. Based on Dr. Evans' testimony, the court concluded that the "massive dose [of midazolam] required by the Florida protocol . . . will render the individual insensate to noxious stimuli by placing the individual in an anesthetic state, unable to discern pain," that

6

its effects would be "quite similar to that of sodium thiopental or pentobarbital on consciousness," and that it "would result in a cascade effect with the whole body rapidly starting to shut down" until an inmate's "ultimate[] death." Id. at 25, 35.

The court, again crediting Dr. Evans' testimony, also rejected Chavez's contention that midazolam, in the massive dose stipulated in the 2013 Protocol, carries a substantial risk of paradoxical reactions, and his contention that the bodily movements reported in the executions of Happ, Muhammad, and McGuire demonstrated a significant likelihood of consciousness when midazolam is used in an execution protocol. Dr. Evans testified during the evidentiary hearing that the incidence of paradoxical reactions in normal therapeutic settings was "less than 1 percent," and that a massive dose of midazolam would avoid any potential paradoxical reactions and directly render a person unconscious. The district court credited all of that testimony and discredited Dr. Lubarsky's contrary testimony. Dr. Evans also testified that body movement does not necessarily indicate consciousness. Crediting that testimony, the court found that "Happ's movement (and Muhammad's, if his eye opened) does not necessarily equate to pain or with consciousness," that the two-drug protocol used in Ohio to execute McGuire was not "sufficiently similar to Florida's execution protocol" to call Florida's protocol into question, and that Chavez "may have only a 1 percent risk of a paradoxical

7

reaction." Doc. 50 at 25 n.24, 26–27, 30. Because Chavez had failed to show that Florida's current lethal injection protocol creates a substantial risk of severe pain, the district court found that he could not successfully challenge the protocol "by contending that the one-drug protocol may be a better execution protocol for Florida to adopt." Id. at 37.

Chavez timely appealed to us the district court's denial of his omnibus motion.[3] We have jurisdiction under 28 U.S.C. § 1292(a)(1). He has also filed in this Court an application for a stay of execution.

## II. DISCUSSION

A preliminary injunction is appropriate if the movant demonstrates all of these elements: (1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the

---

[3] Chavez's notice of appeal states that he appeals from "the decision" of the district court on February 10, 2014. The decision of the court on that date was to deny his omnibus motion seeking a preliminary injunction, a temporary restraining order, and a stay of execution. Because notice was given to the party opposing the motion for a restraining order and an evidentiary hearing has been held, the motion for a restraining order is moot or, if one prefers, the issues involving it are merged into the motion for a preliminary injunction. Likewise, any attempted appeal of the district court's denial of a stay of execution is subsumed in Chavez's motion for a stay of execution in this Court. We would not hold that the district court abused its discretion in deciding not to stay the execution unless, at a minimum, we ourselves were going to stay the execution, which would in turn moot an appeal of the district court's denial of a stay. For those reasons, and for the sake of brevity and clarity, we will treat Chavez's appeal as challenging the denial of his request for a preliminary injunction.

other litigant; and (4) that the preliminary injunction would not be averse to the public interest. Parker v. State Bd. of Pardons & Paroles, 275 F.3d 1032, 1034–35 (11th Cir. 2001). We review a district court's denial of a motion for a preliminary injunction only for an abuse of discretion. See Valle v. Singer, 655 F.3d 1223, 1225 (11th Cir. 2011).

Capital punishment, including capital punishment by lethal injection, generally is constitutional. See Baze v. Rees, 553 U.S. 35, 47, 128 S.Ct. 1520, 1529 (2008) (plurality opinion).[4] Because "[s]ome risk of pain is inherent in any method of execution," the Eighth Amendment "does not demand the avoidance of all risk of pain in carrying out executions," particularly where the pain results "by accident or as an inescapable consequence of death." Id. at 47, 50, 128 S.Ct. at 1529, 1531. Nor does the Eighth Amendment prohibit procedures that create an

---

[4] The plurality opinion in Baze was joined by only three Justices, but it contains the holdings of the Court in that case. See Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 993 (1977) (explaining that with a fractured decision the holding of the Court is the "position taken by those Members who concurred in the judgments on the narrowest grounds") (internal marks and quotation marks omitted). Chief Justice Roberts' plurality opinion denied relief on a narrower ground than the concurring opinion of Justice Thomas, which was joined by Justice Scalia. See Baze, 553 U.S. at 39, 47–52, 128 S.Ct. at 1525, 1529–32 (plurality opinion); id. at 94–107, 128 S.Ct. at 1556–63 (Thomas, J., concurring in the judgment, joined by Scalia, J.). Two circuits have explicitly recognized that Chief Justice Roberts' plurality opinion contains the holdings in Baze. See Dickens v. Brewer, 631 F.3d 1139, 1145–46 (9th Cir. 2011); Jackson v. Danberg, 594 F.3d 210, 222–23 (3d Cir. 2010). We have implicitly done so. See Valle, 655 F.3d at 1231–32; DeYoung v. Owens, 646 F.3d 1319, 1325 (11th Cir. 2011); Powell v. Thomas, 641 F.3d 1255, 1257 (11th Cir. 2011).

9

"unnecessary risk" of pain without more. Id. at 47, 51, 128 S.Ct. at 1529, 1532 (rejecting the petitioners' contention that the "the Eighth Amendment prohibits procedures that create an 'unnecessary risk' of pain"). Instead, to prevail on an Eighth Amendment challenge to a lethal injection protocol, a condemned inmate must establish "an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment." Id. at 50, 128 S.Ct. at 1531 (quotation marks omitted). To demonstrate that, an inmate must show two things: (1) the lethal injection protocol in question creates "a substantial risk of serious harm," and (2) there are "known and available alternatives" that are "feasible, readily implemented," and that will "in fact significantly reduce [the] substantial risk of severe pain." Id. at 50, 52, 61, 128 S.Ct. at 1531–32, 1537; see also id. at 52 n.3, 128 S.Ct. at 1532 n.3 (noting that a showing of a "substantial risk of serious harm" is a "threshold requirement" for asserting a viable Eighth Amendment challenge).

Chavez has not established a substantial likelihood of success on the merits of his Eighth Amendment claim that the use of midazolam hydrochloride in Florida's current lethal injection protocol amounts to cruel and unusual punishment. In light of the district court's thorough and detailed credibility determinations and the extensive factual findings that flowed from them, including

10

the court's finding that the "massive dose [of midazolam] required by the Florida protocol . . . will render the individual insensate to noxious stimuli by placing the individual in an anesthetic state, unable to discern pain," Chavez has not demonstrated that the use of midazolam in the 2013 Protocol creates a substantial risk of serious harm. The district court's findings, none of which are clearly erroneous, negate any contention that Chavez's evidence shows that midazolam is not effective as an anesthetic. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574–575, 105 S.Ct. 1504, 1511–12 (1985) (explaining that factual findings may not be set aside on appeal unless clearly erroneous, and that "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error"); United States v. Lebowitz, 676 F.3d 1000, 1009 (11th Cir. 2012) ("Appellate courts reviewing a cold record give particular deference to credibility determinations of a fact-finder who had the opportunity to see live testimony.") (quotation marks omitted). As a result, Chavez cannot show that the use of midazolam would allow him to feel sensations of suffocation and searing pain caused by the other two drugs in the 2013 Protocol, vecuronium bromide and potassium chloride. This ground is a sufficient basis to

11

find that the district court did not abuse its discretion in finding that Chavez failed to demonstrate a substantial likelihood of success on the merits.[5]

## III. THE MOTION FOR A STAY OF EXECUTION

The standard for granting a motion for a stay of execution mirrors that for granting a preliminary injunction which, in this specific context, is a stay of execution.  A stay should not be granted unless the inmate establishes a substantial likelihood of success on the merits.  Valle, 655 F.3d at 1225.  For the reasons we have already discussed, Chavez has failed to show a substantial likelihood of success on the merits of his claims.  For that reason, his motion for a stay of execution is due to be denied without regard to the other three requirements for issuance of one.  Id.

## IV. CONCLUSION

The district court's order denying a preliminary injunction is AFFIRMED. The motion for a stay of execution is DENIED.

---

[5] In light of our conclusion that Chavez has not established a substantial likelihood of success on the merits of any of his claims, we do not address and imply no view about the State's asserted defenses based on the statute of limitations, exhaustion of administrative remedies, and res judicata.

12

CARNES, Chief Judge, concurring:

I concur in all of the Court's opinion and write separately to discuss an independently adequate alternative reason why Chavez has failed to show a substantial likelihood of success on his claim that Florida's use of midazolam hydrochloride in its 2013 Protocol violates the Eighth Amendment's ban on cruel and unusual punishment.

The Supreme Court held in Baze v. Rees, 553 U.S. 35, 128 S.Ct. 1520 (2008) (plurality opinion), that to establish an Eighth Amendment violation in the use of a lethal injection protocol, an inmate must show "an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless." Id. at 50, 128 S.Ct. at 1531 (quotation marks omitted). To establish that in regard to the use of a particular drug, the inmate must prove not only that the drug being used creates "a substantial risk of serious harm," but also that there is a "known and available alternative[]" drug that is "feasible, readily implemented," and that will "in fact significantly reduce [the] substantial risk of severe pain." Id. at 50, 52, 61, 128 S.Ct. at 1531–32, 1537. The Court could not have been clearer about that:

> [T]he proffered alternatives must effectively address a "substantial risk of serious harm." To qualify, the alternative procedure must be feasible, readily implemented, and in fact significantly reduce a

13

substantial risk of severe pain.  If a State refuses to adopt such an alternative in the face of these documented advantages, without a legitimate penological justification for adhering to its current method of execution, then a State's refusal to change its method can be viewed as "cruel and unusual" under the Eighth Amendment.

Id. at 52, 128 S.Ct. at 1532 (citation omitted).  As is true with every other element of a claim, the burden of proof on all aspects of the alternative drug requirement is on the plaintiff inmate.

The Supreme Court explained that it is not enough for an inmate merely to show that "a slightly or marginally safer alternative" is available.  Id. at 51, 128 S.Ct. at 1531.  Letting that showing suffice "would embroil the courts in ongoing scientific controversies beyond their expertise," "threaten to transform [them] into boards of inquiry charged with determining 'best practices' for executions," and "substantially intrude on the role of state legislatures in implementing their execution procedures."  Id.

An inmate obviously cannot begin to prove that there is an "available," "feasible," and "readily implemented" alternative drug that will "in fact significantly reduce a substantial risk of severe pain," id. at 52, 61, 128 S.Ct. at 1532, 1537, without identifying a specific drug that meets those requirements. Chavez has failed to do that.  While he attacks the use of midazolam in Florida's

14

three-drug lethal injection protocol, and broadly advocates for the adoption of a single-drug protocol consisting of a fatal dose of a barbiturate, he has not specifically identified any particular barbiturate that is even allegedly "available," "feasible," and can be "readily implemented" by the State of Florida.

Chavez's filings in the district court did not contend that there is any specific alternative drug that is actually available for use by the State of Florida. In his amended complaint, the appendices to that complaint, and his omnibus motion, Chavez mentioned two barbiturates — pentobarbital and sodium thiopental — that could be used in place of midazolam, but he admitted that neither drug was available for use in executions. Chavez conceded in his complaint that Florida's "2013 Protocol was created in response to the unavailability of pentobarbital."[1] Doc.15 at 6 (emphasis added). And in an appendix to his amended complaint, Chavez admitted that sodium thiopental is not available for use in lethal injections either. The appendix contains a "Request for Additional Public Records from the

_____

[1] Even in the absence of Chavez's concessions, it is clear that sodium thiopental and pentobarbital are not available and feasible alternatives to Florida's 2013 Protocol. Both drugs were once widely used in lethal injection protocols across the country, but they became unavailable for that use after their manufacturers, because of opposition to the death penalty, refused to let the drugs be used in executions. See Molly Hennessy-Fiske, Prolonged Execution Raises Debate on Lethal Injections, Balt. Sun, Jan. 19, 2014, at 20A; Eric Eckholm & Katie Zezima, States Face Shortage of Key Lethal Injection Drug, N.Y. Times, Jan. 21, 2011, http://www.nytimes.com/2011/01/22/us/22lethal.html; Manny Fernandez, Executions Stall as States Seek Different Drugs, N.Y. Times, Nov. 8, 2013, http://www.nytimes.com/2013/11/09/us/executions-stall-as-states-seek-different-drugs.html.

15

Florida Department of Corrections Pursuant to Fla. R. Crim. P. 3.852(i)," in which

Chavez stated:

> In 2010, international pressure against the death penalty resulted in a
> shortage of sodium thiopental and the states that employ capital
> punishment had to scramble for an alternative drug.  On June 8, 2011,
> Florida followed the path of other states when it issued new lethal
> injection procedures substituting the barbiturate pentobarbital
> (Nembutal) for sodium thiopental.

Doc. 20 at 6.

Instead of alleging that pentobarbital and sodium thiopental are "available,"

"feasible," and can be "readily implemented" by the State of Florida in place of

midazolam, Chavez represented to the district court in his filings that they are not

available for use in lethal injections.  Even if he had not made those concessions,

however, his claim would still fail for the same reasons.  An inmate must not only

plead that a specifically named alternative drug is "available," "feasible" and can

be "readily implemented" in the challenged lethal injection protocol, he must also

prove it.  Chavez introduced not one jot, tittle, or iota of evidence that

pentobarbital or sodium thiopental is available and can be readily obtained by the

State of Florida for use in executing him or any other death-row inmate.

16

While Dr. Lubarsky's declaration generally touted the relative virtues of barbiturates and broadly asserted that there are "alternative drugs [that] can reliably and humanely cause death without [the] risk of excruciating pain," he conspicuously did not name a single barbiturate or any other drug that he believed Florida actually could obtain and use. And he did not testify that there was any such drug. While testifying, Dr. Lubarsky did make a passing reference to the anesthetic propofol as an alternative to midazolam, but neither he nor Chavez stated that it was actually available, feasible, and could be readily implemented by Florida in its lethal injection process. An alternative drug that its manufacturer, or its distributor, or the FDA will not allow to be used for lethal injection purposes is no drug at all for Baze purposes.[2]

Throughout the district court proceedings, the most Chavez did in the way of demonstrating an adequate alternative to the 2013 Protocol was asserting that a single-drug protocol was a "feasible, readily implemented alternative procedure." He accurately summarized the extent of his contentions at the evidentiary hearing

---

[2] The reason that Dr. Lubarsky did not testify that Florida could readily obtain propofol to use in its lethal injection protocol probably is that he knew it could not. After Missouri, in 2012, adopted a single-drug lethal injection protocol using propofol, the European Union threatened to limit the export of propofol to American hospitals if it were used in executions. See Mo. to Proceed with Two Executions, Bos. Globe, Oct. 8, 2013, available at 2013 WLNR 25135924. In response to national pressure to avoid any interruption in the supply of propofol, Missouri abandoned its single-drug protocol. See Jim Salter, Missouri Governor Stops Execution Using New Drug, Bos. Globe, Oct. 12, 2013, available at 2013 WLNR 25592304.

17

when he said: "We've offered the alternatives, the one-drug protocol."  But he never identified that one drug nor even suggested how Florida could obtain it for use in executions.  Chavez has not come close to satisfying his burden of proving the existence of an "available," "feasible," and "readily implemented" alternative to midazolam hydrochloride, let alone one that will significantly reduce a substantial risk of severe pain.  This is another reason he has failed to establish a substantial likelihood of success on the merits of his Eighth Amendment challenge to the use of midazolam in Florida's 2013 Protocol.

18

WILSON, Circuit Judge, concurring:

I agree that the district court properly found that Chavez failed to demonstrate a substantial likelihood of success on the merits of his claims and is thus not entitled to a stay of his execution.  Therefore, I concur in the majority opinion.  I write separately to underscore that the question of whether a significant change has occurred to a state's lethal injection protocol is a fact-intensive inquiry for which an evidentiary hearing is especially important.  The district judge in this case properly conducted an evidentiary hearing and thoroughly studied the parties' filings and exhibits and the governing legal principles.  Indeed, while the district court concluded that expert anesthesiologist Dr. Lubarsky's testimony was ultimately speculative and insufficient to meet Chavez's burden, nothing prevents a future inmate from presenting an anesthesiologist or expert to assert an opinion based on more conclusive and methodologically sound results.  Further, in the event of a botched execution in this or a future case, such evidence may be relevant in a subsequent Eighth Amendment challenge to Florida's execution practices.

19

MARTIN, J., concurring in judgment:

In Mr. Chavez's case, the District Court has made the factual finding that Florida's "protocol change substituting midazolam for the first drug in the three-drug protocol is not a substantial change to the protocol." This finding is not clearly erroneous based on the record before the District Court, so I am compelled to affirm the District Court's Order denying a preliminary injunction and stay of Mr. Chavez's execution.

I write separately to emphasize the fact-intensive nature of the District Court's decision in this case and to commend the District Court for holding an evidentiary hearing <u>before</u> concluding that Mr. Chavez "has not shown a substantial likelihood of success on the merits of his claims because they are barred by Florida's four-year statute of limitations." Because I view the statute of limitations issue as dispositive to Mr. Chavez's Eighth Amendment claims, I agree with the decision to affirm the District Court. But because we review a record from the District Court which arose from a quickly assembled hearing based on a request for injunctive relief, I do not believe that record lends itself to a review of the merits of Mr. Chavez's underlying claims.

Where, as here, the state raises a valid statute of limitations defense to a

20

§ 1983 lethal injection lawsuit, it is not necessary for us to consider the merits of the underlying constitutional claim.  See, e.g., Henyard v. Sec'y, DOC, 543 F.3d 644, 647 (11th Cir. 2008) ("We need not, and do not, reach the merits of Henyard's constitutional claims [regarding the constitutionality of Florida's lethal injection procedures] because we conclude: (1) that the district court did not err in determining that the particular claims in Henyard's current § 1983 action are barred by the statute of limitations and that thus Henyard has not carried his burden to show a substantial likelihood of success on his § 1983 complaint . . . ."); McNair v. Allen, 515 F.3d 1168, 1178 (11th Cir. 2008) (finding a District Court abused its discretion in granting a stay in a § 1983 lethal injection case by determining the prisoner "had a significant possibility of success on the merits of his claim when, in fact, the complaint was filed beyond the applicable . . . statute of limitations"). We review an evidentiary record in which Mr. Chavez was expressly limited by the district court, no doubt due in large measure to the timing of his lawsuit being filed only a couple of weeks before his scheduled execution.

Mr. Chavez filed his § 1983 amended complaint in the District Court on Monday, February 3, 2014.  The District Court entered an order that same day directing the parties to file expedited pleadings in the District Court the next day. Mindful of Mr. Chavez's imminent execution, the District Court also scheduled a

21

"limited evidentiary hearing" for Wednesday, February 5, 2014 at 9:00 a.m.   The

Order setting the hearing limited Mr. Chavez to a single witness, Dr. Lubarsky,

whose testimony was also limited solely to the subject of his earlier filed affidavit.

On February 4th, the state filed a response and motion to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6) and, alternatively moved for summary

judgment, arguing that  Mr. Chavez's claims were, among other things, barred by

the statute of limitations.  The state also filed an emergency motion for

reconsideration of the District Court's order granting a limited evidentiary hearing,

which the District Court took under advisement.

At the beginning of the evidentiary hearing, the District Court heard

arguments on preliminary matters, including arguments about the necessity of even

having an evidentiary hearing.  Mr. Chavez's counsel argued that his expert, Dr.

Lubarsky would testify, consistent with his earlier filed affidavit, that Florida's

September 2013 changes to its lethal injection protocol worked a "substantial

change" sufficient to overcome any statute of limitations bar.  Mr. Chavez's

counsel acknowledged at the time that "if we do not prevail on a substantial

change, then obviously the statute of limitations issue is foreclosed, but we will

make the case today that this was a substantial change."  Mr. Chavez's arguments

prompted the District Court to ask the state the following question:

22

"[I]s not that determination a fact intensive determination as to whether or not there's been a substantial change?  And as I understand [the state's] argument, the statute of limitations rests on whether or not there has been a substantial change?" The state answered "Yes" and argued that "merely substituting "one anesthetizing drug in the three-drug protocol does not restart your statute of limitations."  After hearing additional argument, the District Court denied the state's motion for the Court to reconsider its order setting an evidentiary hearing, explaining that the issues raised by the state "are all fact dependent."  I could not agree more with the District Court's decision that an evidentiary hearing was necessary.

It is well-settled that "a method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." McNair v. Allen, 515 F.3d 1168, 1174 (11th Cir. 2008).  Mr. Chavez's state case became final in 2003 with the denial of certiorari review by the United States Supreme Court. See Chavez v. Florida, 539 U.S. 947, 123 S. Ct. 2617 (2003).[1]  In order to

---

[1] Although not the subject of this Order, it is not disputed that Mr. Chavez never had federal habeas review of the merits of his § 2254 habeas petition, because he missed the deadline for filing set by the Antiterrorism and Effective Death Penalty Act.  See Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057 (11th Cir. 2011), cert. denied sub nom., Chavez v. Tucker, ___ U.S. ___, 132 S. Ct. 1018 (2012).   Indeed to my knowledge he is the first inmate in the state of Florida to be executed with no federal habeas review of the merits of his claims.

23

overcome Florida's statute of limitations defense, Mr. Chavez "must show that he filed his § 1983 complaint within [four] years of a <u>significant change</u> in [Florida's] method of administering lethal injections." <u>Arthur v. Thomas</u>, 674 F.3d 1257, 1259 (11th Cir. 2012) (emphasis added).

Mr. Chavez's motion for temporary restraining order, preliminary injunction and stay in the District Court alleged his § 1983 action was not barred by the statute of limitations because the midazolam protocol "is a substantially changed execution protocol." Specifically, Mr. Chavez challenged Florida's substitution of midazolam hydrochloride for pentobarbital as the first drug in Florida's three-drug protocol. Unlike pentobarbital, which is a barbiturate, Mr. Chavez's amended § 1983 complaint alleged with specificity that "midazolam is an . . . inappropriate drug to use to achieve the purpose of the first drug in a three-drug lethal injection protocol because it is never used as the sole anesthetic for a painful procedure and has no analgesic properties."

Significantly, Mr. Chavez supported his factual allegations with a declaration from Dr. David Lubarsky, an anesthesiologist with impressive credentials from the University of Miami, as well as an affidavit from James R. McDonough, former Secretary for the Florida Department of Corrections. In short, Mr. Chavez presented new and additional information to the District Court in

24

support of his § 1983 claims that was <u>not</u> presented or considered in <u>Muhammad v.</u>

<u>Crews</u>, No. 3:13-cv-1587-J-32JBT, 2013 WL 6844489 (M.D. Fla. Dec. 27, 2013),

<u>aff'd sub nom.</u>, <u>Muhammad v Sec'y, Fla. Dep't of Corr.</u>, 739 F.3d 683 (11th Cir.

2014), <u>cert. denied</u>, ___ U.S. ___, 134 S. Ct. 894 (2014).  That additional

information included, for example, new allegations that Mr. Muhammad's "eyes

opened three minutes before he was declared dead."  The opening of Mr.

Muhammad's eye at this stage of Florida's midazolam protocol, Mr. Chavez

alleged, "indicates that he was not properly anesthetized and that he would have

been experiencing the effects of the vecuronium and potassium chloride already

administered."  As I mentioned, the District Court limited Mr. Chavez to one

witness, Dr. Lubarsky.   The state was, in turn, permitted to call only one rebuttal

witness of its choosing.

    We have said that "[w]hether a significant change has occurred in a state's

method of execution is a <u>fact-dependent</u> inquiry, which we have treated as such in

each of our recent cases addressing the lethal injection protocols of Alabama,

Georgia and Florida."  <u>Arthur</u>, 674 F.3d at 1260 (emphasis added).  As we

emphasized in <u>Arthur</u>, any conclusion that the substitution of one drug for another

in a lethal injection protocol does not constitute a "significant change" is

necessarily "premised on the specific factual allegations and/or evidence presented

25

and <u>considered</u>" in each case.  <u>Id.</u>  One § 1983 plaintiff's litigation of a particular lethal injection protocol cannot foreclose all further judicial inquiry into the matter. Were it otherwise, courts would be deprived of the ability to consider the significance of the use of new drug in new ways, as well as the experiences states have had in using the new drug protocols.  This is important where, as here, states are experimenting with new drug protocols because of shortages in pentobarbital and other drugs, as well as our evolving scientific knowledge and experience with new drug protocols.

All this is to say, the District Court should be commended for its cautious and deliberate approach to deciding the disputed factual issues concerning Florida's new midazolam drug protocol.  Given the fact dependent nature of the District Court's ruling on the issue of whether Mr. Chavez demonstrated a significant change to the protocol, as well as the deference owed District Court fact findings made after an evidentiary hearing, I am compelled to defer to the District Court's conclusion that Mr. Chavez has not shown a likelihood of success on the merits of his claims because they are barred by Florida's statute of limitations.  The District Court's fact finding on this issue was not clearly erroneous.

26